IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CORSO PROPERTIES, LLC, and NDWC
INVESTMENT PROPERTY, INC.,

        Plaintiffs,

v.

CIVIL ACTION NO.

1:12-cv-3128-JEC

BRANCH BANKING AND TRUST
COMPANY,

        Defendant.

**ORDER & OPINION**

This matter is presently before the Court on defendant's motion to dismiss plaintiffs' first amended complaint ("Def.'s Mot. To Dismiss") [12].[1]  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's motion to dismiss plaintiffs' first amended complaint [12] should be **GRANTED**.

---

[1]  Also before the Court is the defendant's previous motion to dismiss [2].  However, with their response to that first motion, plaintiffs amended their complaint.  Subsequently, defendant moved to dismiss this amended complaint.  (Def.'s Mot. to Dismiss [12].)  Therefore, the defendant's first motion to dismiss [2] is **DENIED as moot**.

AO 72A
(Rev.8/82)

## BACKGROUND

This case arises out of allegedly duplicitous conduct by defendant Branch Banking and Trust ("BB&T") during negotiations of loan agreements with plaintiff NDWC Investment Properties ("NDWC") and subsequent loan assumption and modification agreements with plaintiff Corso Properties ("Corso"). Plaintiffs do not deny their obligation to pay under the explicit terms of the promissory notes or that the notes have matured. (*See* Notes, attached as Exs. A & C to Def.'s Mot. to Dismiss [12], and Assumption Agreements, attached as Exs. E & F to Def.'s Mot. to Dismiss [12].) Instead, they assert claims based on oral representations made by Michael Green, vice president of BB&T's commercial real estate division. (Compl. [8] at ¶ 8.)

## I.   PROCEDURAL HISTORY

Plaintiffs initially filed this action in the Superior Court of Fulton County, alleging defendant breached Georgia's implied covenant of good faith and fair dealing, and that BB&T was guilty of fraud in the inducement, as well as fraud in general. (Not. of Removal [1] at Ex. A.) Defendant timely removed the action and, less than a week later, filed its first motion to dismiss. (Def.'s First Mot. to Dismiss [2].) This first motion to dismiss was based primarily on plaintiffs' failure to allege an independent breach of contract claim and failure to plead their fraud claims with enough specificity.

AO 72A
(Rev.8/82)

(*Id.* at 11 & 19.)  In response, plaintiffs filed an amended complaint with more specific factual allegations.  (Pls.' Resp. to Def.'s First Mot. to Dismiss [9] at 1.)  The amended complaint added a claim that defendant breached an independent oral contract made with the plaintiffs, maintained the fraud in the inducement claim, but no longer alleged generic fraud.  (Compl. [8] at 13.)

Defendant responded with a second motion, again arguing that even this amended complaint failed to state a claim upon which relief could be granted.  (Def.'s Mot. to Dismiss [12].)  Although plaintiffs responded to defendant's first motion to dismiss, they filed no response to this second motion.

## II.  FACTUAL BACKGROUND

The agreements at issue involve six (6) properties originally owned by plaintiff NDWC in DeKalb County, Georgia.  (Pls.' First Am. Verified Compl. ("Compl.") [8] at ¶ 6.)  Before refinancing the loans with BB&T, these properties were secured by fully amortized loans, each with a thirty-year term.  (Id. at ¶ 13.)  During initial negotiations, BB&T stated that it could offer the plaintiffs a lower interest rate on all six of the properties that would also allow NDWC to complete payment on the loans ten years earlier.  (*Id.* at ¶¶ 9-10.)  However, the new loan agreement would only be for a five-year term and NDWC expressed reservations about moving from thirty-year fixed loans to a series of five-year loans.  (*Id.* at ¶¶ 11-14.)

3

According to plaintiffs' amended complaint, BB&T responded to these concerns by "assur[ing] NDWC that BB&T would refinance the remaining balance on the loans in four successive five (5) year terms at the prevailing market interest rate until the total remaining balance was paid." (*Id.* at ¶ 15.)  Plaintiffs claim that, based on these oral representations by BB&T, NDWC obtained a loan from BB&T for three of the properties in the principal amount of $355,000 in May 2007.  (Compl. [8] at ¶ 18.)  One year later, NDWC obtained a second loan with approximately the same maturity date for the remaining three properties in the principal amount of $310,000. (*Id.* at ¶¶ 20-21.)

In December 2009, NDWC transferred all of its interest in the six properties to the newly-created Corso Properties.  (*Id.* at ¶ 25.) BB&T approved of the loan transfer but, prior to closing, informed Corso that the term would only be for one year since Corso was a "new company."  (*Id.* at ¶ 29.)  The complaint then asserts that the parties orally agreed if Corso satisfied certain conditions, such as opening a business account with BB&T and making timely monthly payments under the loan agreement for the one-year period, then BB&T would refinance the remaining balance on the loans in successive five-year terms.  (Compl. [8] at ¶ 30.)  Corso asserts they assumed the loans and obligations based on this alleged oral contract and the fact that BB&T repeated the same assurances that they had initially

AO 72A
(Rev.8/82)

made to NDWC regarding funding successive short-term loans. (*Id.* at ¶¶ 28 & 31.) Corso claims that even though they satisfied all the required conditions, BB&T refused to renew the loans after they matured in December 2011. (*Id.* at ¶¶ 31, 33 & 41.)

Based on these facts, plaintiffs assert three claims against defendant: breach of the oral contract, breach of Georgia's implied covenant of good faith and fair dealing when making contracts, and fraud in the inducement. (*Id.* at 13-16.) Defendant argues that, even taking the factual allegations in the amended complaint as true, plaintiffs fail to state a claim upon which relief can be granted. (Def.'s Mot. to Dismiss [12].) Defendant BB&T argues that the Georgia statute of frauds expressly prohibits the oral contract that plaintiffs allege to have been made. (*Id.* at 11.) Further, the parol evidence rule bars the introduction of oral testimony to modify the terms of the complete, written contract that was signed by the parties. (*Id.* at 13.) Without this independent breach of contract, defendant argues, there can be no claim that they violated a duty of good faith and fair dealing. (*Id.* at 16.)

Defendant also asserts several reasons for why the plaintiffs' fraud in the inducement claim also fails as a matter of law. First, defendant argues that plaintiffs waived any claims against BB&T through its affirmation of the loan documents. (*Id.* at 21.) Second, defendant argues that, under Georgia law, parties are bound by

5

written contracts unless fraud prevented them from reading the contract. (Def.'s Mot. to Dismiss [12] at 21.) Finally, if all of the plaintiffs' claims fail, defendant argues that no damages are justified and the case should be dismissed. (*Id.* at 23.) Although plaintiffs responded to defendant's first motion to dismiss and contemporaneously filed an amended complaint along with their response, they have not filed any sort of response to defendant's motion to dismiss the amended complaint. Accordingly, defendant's motion is deemed to be unopposed. LR 7.1B, NDGa. Even so, the Court has taken the time to review and confirm the merits of defendant's grounds for dismissal.

## DISCUSSION

### I.   LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) only when the facts, as alleged in the complaint, fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the facts alleged in the complaint must be accepted as true and must be construed in a light most favorable to the plaintiff. *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" and a pleading that offers "labels and conclusions" or "a formulaic recitation of the

6

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.  <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant moved to dismiss the plaintiffs' complaint on the ground that, even accepting the allegations as true, it fails to state a claim upon which relief can be granted.  (Def.'s Mot. to Dismiss [12].)  As noted, plaintiffs have not responded.

### A.  <u>Breach Of Oral Contract</u>

Around the end of 2009, Corso Properties was created as a limited liability company with the sole purpose of owning and managing the six properties implicated in this action.  (Compl. [8] at ¶ 24.)  Due to changes in NDWC's ownership structure, BB&T and the plaintiffs agreed to allow Corso to assume the loans obtained by NDWC.  (*Id.* at ¶ 23.)  However, prior to closing, BB&T stated that the initial loan term for Corso would only be for one year because Corso was a newly-formed company.  (*Id.* at ¶ 29.)  The complaint alleges that defendant BB&T orally agreed to refinance the balance remaining on the loans at the end of the year if Corso fulfilled certain obligations, but that BB&T subsequently failed to renew at the end of the year even though Corso satisfied its obligations under this oral agreement.  (*Id.* at ¶¶ 30 & 41.)

The Georgia statute of frauds requires that certain obligations and contracts be made in writing to be enforceable, including "[a]ny

7

commitment to lend money." O.C.G.A. § 13-5-30(7). Although plaintiffs provided no response to defendant's motion, the Court is aware that similarly-situated plaintiffs have unsuccessfully argued that the Georgia statute of frauds should only apply to commitments to lend "new" money, as opposed to oral promises to refinance an existing debt. See *Stedry v. Summit Nat'l Bank*, 227 Ga. Ap. 511, 514-15 (1998). Georgia courts, however, have rejected this attempt to "graft such an interpretation on O.C.G.A. § 13-5-30(7)'s clear and unambiguous terms." *Id.*

Georgia courts have also previously addressed whether an agreement to renew a borrower's mortgage fell under subsection 4 of the statute, which requires that "[a]ny contract for sale of lands, or any interest in, or concerning lands" also be in writing. O.C.G.A. § 13-5-30(4). Again, Georgia courts hold that the statute of fraud indeed controls in this situation. *Allen v. Tucker Fed. Bank*, 236 Ga. App 245, 246 (1999). In *Allen*, plaintiffs alleged that although the defendant bank had previously foreclosed on plaintiffs' home, the bank later orally agreed to renew the mortgage. *Id.* at 245. The appellate court found that "any agreement by the [lender] . . . to 'reinstate or refinance' the [] mortgage would be tantamount to a transfer of an interest in real property subject to O.C.G.A. § 13-5-30(4)." *Id.* at 246.

Plaintiffs here similarly allege that the defendant bank orally

promised to renew and refinance the loan agreements at the end of the Corso's first term (Compl. [8] at ¶ 30), but that instead BB&T foreclosed on the properties. (*Id.* at ¶ 44.)  As explained above, one or both cited subsections of the statute of frauds apply here, meaning the alleged oral promise is unenforceable.  Therefore, even if these promises were made by the bank, the plaintiffs' claim here, like the claim in *Allen*, "is untenable in the absence of a written agreement."  *Id.*  For these reasons, the Court concludes that the plaintiffs' claim for breach of an oral contract fails as a matter of law.

       B.   <u>Breach Of Duty Of Good Faith And Fair Dealing</u>

Plaintiffs also argue that defendant breached the implied duty of good faith in performing its obligations under the oral contract. (Compl. [8] at 14-16.)  However, "[u]nder Georgia law, the covenant [of good faith and fair dealing] is not an independent contract term."  *APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1329, 1365 (N.D. Ga. 2004(Story, J.)(quoting *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990)(internal quotations omitted).  In *APA Excelsior*, plaintiffs similarly alleged a breach of an explicit contractual duty as well as a breach of the implied duty of good faith and fair dealing.  *Id.* at 1363.  However, Judge Story found that the defendants did not breach any explicit contractual duty and, for this reason, plaintiffs could not invoke

9

the implied covenant of good faith and fair dealing as a separate doctrine. *Id.* at 1365.

In the Eleventh Circuit case cited by Judge Story, the appellate court confronted the same issue. In that case, *Alan's of Atlanta*, the circuit court rejected a party's attempt to invoke the implied covenant as an independent term in the contract. *Alan's of Atlanta*, 903 F.2d at 1429. Because an implied covenant must attach to a specific contractual term, the court held that "it is not an undertaking that can be breached apart from those [explicit] terms." *Id.*

In this case, this Court has held that the statute of frauds required the alleged oral contract to be in writing to be enforceable. There can be no breach of an unenforceable contract. *Id.* Further, plaintiffs do not allege that defendant breached any explicit term in the promissory note or loan assumption agreements between the parties. Thus, plaintiffs fail to allege any independent breach of contract in which the implied duty of good faith and fair dealing could have attached. For this reason, plaintiffs' claim of a breach of the implied duty of good faith and fair dealing is not viable, as a matter of law.

C.   <u>Fraud In The Inducement</u>

Plaintiffs' final claim is that, through the "material misstatements, false assurance and misrepresentation," BB&T induced

plaintiffs to consolidate and refinance the loans. (Compl. [8] at ¶¶ 61 & 69.) Specifically, plaintiffs assert that they relied on defendant's promises that the loan agreements would be renewed once they matured. (*Id.* at ¶¶ 15, 30 and 44.) Defendant raises several arguments for why, even accepting the complaint's allegations as true, this count should be dismissed. Because the Court agrees with defendant that Georgia law does not recognize a fraud in the inducement claim under the facts as alleged by the plaintiffs, (Def.'s Mot. to Dismiss [12] at 21), this claim must also be dismissed under FED. R. CIV. P. 12(b)(6).

The plaintiffs, however, do not argue for a contract modification, but instead seek damages under a theory that they were fraudulently induced to sign the contract. The Court agrees with defendant that, absent a showing of a fraud that prevented plaintiffs from reading the new agreement, which agreement clearly set out the terms, plaintiffs cannot prevail on a theory that defendant's oral representations fraudulently induced plaintiffs' written agreement. The Georgia Court of Appeals has held:

> Parties to a contract are presumed to have read their provisions and to have understood the contents. One who can read, must read, for he is bound by his contracts. <u>While a legal excuse, such as fraud, may be shown for failing to read, the fraud must prevent the party from reading the contract</u>.

*Wyatt v. Hertz Claim Mgmt. Corp.*, 236 Ga. App. 292 (1999)(internal

11

quotations and citations omitted)(emphasis added).

In the present case, plaintiffs admit signing the notes, whose explicit terms showed a maturity date of December 2011. (Compl. [8] at ¶ 33.) Plaintiffs make no claim that the fraud perpetrated prevented them from reading the contract. See *McLemore v. S.W. Georgia Farm Credit, ACA.*, 230 Ga. App. 85, 88 (1998)(the only fraud that relieves a party of its duties under a written contract is a fraud which prevents them from ready the contract). In short, plaintiffs' fraud in the inducement claim also fails.

<u>CONCLUSION</u>

For the above reasons, the Court finds all three of plaintiffs' claims to be lacking and thus, **GRANTS** defendant's unopposed motion to dismiss [12] and **DENIES as moot** defendant's first motion to dismiss [2].

SO ORDERED, this 25th day of September, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE